# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF IDAHO

| | | |
|---|---|---|
| MICHAEL L. JENSEN, | ) | |
| | ) | |
| Petitioner, | ) | Case No. CV 05-188-E-LMB |
| | ) | |
| v. | ) | **MEMORANDUM DECISION** |
| | ) | **AND ORDER** |
| JO ANNE B. BARNHART, | ) | |
| COMMISSIONER OF SOCIAL | ) | |
| SECURITY, | ) | |
| _____) | | |

Currently pending before the Court is Michael L. Jensen's Complaint and Petition for Review (Docket No. 1) seeking review of the final decision of Respondent denying his claim for Title II Social Security disability benefits. The action is brought pursuant to 42 U.S.C. § 405(g).

Having carefully reviewed the record and otherwise being fully advised, the Court enters the following Memorandum Decision and Order.

## I.

## ADMINISTRATIVE PROCEEDINGS

Michael L. Jensen ("Petitioner" or "Claimant") applied for disability insurance benefits under Title II of the Social Security Act on January 7, 2003, alleging disability beginning May 30, 2000, as a result of tennis elbow, leg pain, back pain, neck pain, and loss of strength. (AR 14, 126). Petitioner's application was denied initially and again

after reconsideration. (AR 101, 109). Petitioner filed a timely request for a hearing before an Administrative Law Judge. (AR 100). ALJ G. Alejandro Martinez held a hearing on October 18, 2004, at which time Petitioner, represented by counsel, appeared and testified. (AR 31). Clark Newhall, M.D., J.D., an impartial medical expert, appeared and testified. (AR 31–32). James J. Grissom, a vocational expert, also testified. *Id*.

On November 24, 2004, the ALJ issued a decision denying Petitioner's claim because he found Petitioner could return to his past relevant work as a security guard. (AR 17). Petitioner requested the Appeals Council review the ALJ's decision. (AR 8–9). The Appeals Council denied Petitioner's request on March 24, 2005, making the ALJ's decision the final decision of the Commissioner of Social Security. (AR 4).

Having exhausted his administrative remedies, Petitioner timely filed the instant action. *See Complaint & Petition for Review* (Docket No. 1). Petitioner requests that the ALJ's decision be reversed and benefits awarded, or, in the alternative, that this matter be remanded in order to allow the ALJ an opportunity to further evaluate the evidence. *Id*. at p. 2.

## II.

## BACKGROUND

At the time of the hearing before the ALJ, Petitioner was forty-seven years old, with past work experience as a painter, a motorcycle mechanic, a security guard, a truck washer, and a bike repair person. (AR 14). Petitioner alleges that he became disabled on

May 30, 2000, due to tennis elbow, leg pain, back pain, neck pain, and loss of strength. *Id*.

## III.

## STANDARD OF REVIEW

It is undisputed that the burden of proof rests upon Petitioner to establish an entitlement to disability benefits. *Meanel v. Apfel*, 172 F.3d 1111, 1113 (9th Cir. 1999). In evaluating the evidence at an administrative hearing, the ALJ must follow a five-part sequential process. 20 C.F.R. §§ 404.1520, 416.920 (2005). The second part of that process involves a determination regarding whether the claimant has a "severe impairment." 20 C.F.R. § 416.905(a) (2006). If no "severe" impairment is found, the claimant will be found not to be disabled. 20 C.F.R. §§ 404.1520(c), 416.920(c).

To be upheld, the Commissioner's decision must be supported by substantial evidence and be based on proper legal standards. 42 U.S.C. § 405(g) (2005); *Matney ex rel. Matney v. Sullivan*, 981 F.2d 1016, 1019 (9th Cir. 1992); *Gonzalez v. Sullivan*, 914 F.2d 1197, 1200 (9th Cir. 1990). Findings of the ALJ as to any fact, if supported by substantial evidence, are conclusive. 42 U.S.C. § 405(g); *Vidal v. Harris*, 637 F.2d 710, 712 (9th Cir. 1981). In other words, if there is substantial evidence to support the ALJ's factual decisions, they must be upheld, even when there is conflicting evidence. *Hall v. Sec'y of Health, Educ. & Welfare*, 602 F.2d 1372, 1374 (9th Cir. 1979).

Substantial evidence is defined as such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. 389,

401 (1971); *Tylitzki v. Shalala*, 999 F.2d 1411, 1413 (9th Cir. 1993); *Flaten v. Sec'y of Health & Human Servs.*, 44 F.3d 1453, 1457 (9th Cir. 1995). The standard requires more than a scintilla but less than a preponderance, *Sorenson v. Weinberger*, 514 F.2d 1112, 1119 n.10 (9th Cir. 1975); *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989), and "does not mean a large or considerable amount of evidence . . . ." *Pierce v. Underwood*, 487 U.S. 552, 565 (1988).

With respect to questions of fact, the role of the Court is to review the record as a whole to determine whether it contains evidence that would allow a reasonable mind to accept the conclusions of the ALJ. *See Richardson*, 402 U.S. at 401; *see also Matney*, 981 F.2d at 1019. The ALJ is responsible for determining credibility and resolving conflicts in medical testimony, *Allen v. Heckler*, 749 F.2d 577, 579 (9th Cir. 1984), resolving ambiguities, *see Vincent ex. rel. Vincent v. Heckler*, 739 F.2d 1393, 1394–95 (9th Cir. 1984), and drawing inferences logically flowing from the evidence, *Sample v. Schweiker*, 694 F.2d 639, 642 (9th Cir. 1982). Where the evidence is susceptible to more than one rational interpretation in a disability proceeding, the reviewing court may not substitute its judgment or interpretation of the record for that of the ALJ. *Flaten*, 44 F.3d at 1457; *Key v. Heckler*, 754 F.2d 1545, 1549 (9th Cir. 1985).

With respect to questions of law, the ALJ's decision must be based on proper legal standards and will be reversed for legal error. *Matney*, 981 F.2d at 1019. The ALJ's construction of the Social Security Act is entitled to deference if it has a reasonable basis in law. *See id*. However, reviewing federal courts "will not rubber-stamp an

**MEMORANDUM DECISION AND ORDER -4-**

administrative decision that is inconsistent with the statutory mandate or that frustrates the congressional purpose underlying the statute." *Smith v. Heckler*, 820 F.2d 1093, 1094 (9th Cir. 1987). Reviewing federal courts must bear in mind that the Social Security Act is remedial and should be construed liberally and "not so as to withhold benefits in marginal cases." *Id*. at 1095 (citation omitted).

The issues presented in the instant appeal are whether the following are based on application of proper legal standards and supported by substantial evidence: (1) the ALJ's determination of Petitioner's residual functional capacity; and (2) the ALJ's determination that Petitioner could return to his past work as a security guard. *See Petitioner's Brief in Support of Petition for Review* (Docket No. 11); *see also Respondent's Brief*, p. 2 (Docket No. 13).

## IV.

## DISCUSSION

In evaluating the evidence presented at an administrative hearing, the ALJ must follow a sequential process in determining whether a person is disabled within the meaning of the Act. 20 C.F.R. §§ 404.1520, 416.920.

### A. <u>Sequential Process</u>

The first step in the sequential process requires the ALJ to determine whether the claimant is engaged in substantial gainful activity. 20 C.F.R. § 404.1520(a)(4)(i). If the answer is in the affirmative, disability benefits are denied. 20 C.F.R. § 404.1520(b). In

the instant action, the ALJ concluded that Petitioner has not engaged in substantial gainful activity since the alleged onset of disability. (AR 14).

The second step requires the ALJ to determine whether the claimant has a medically-severe impairment or combination of impairments. 20 C.F.R. § 404.1520(a)(4)(ii). If the answer is in the negative, disability benefits are denied. 20 C.F.R. § 404.1520(c). In the instant action, the ALJ found that Petitioner has degenerative disc disease of the cervical and lumbar spine, hypertension, diabetes II, a disorder of the right knee, bilateral carpal tunnel syndrome with past surgery, sleep apnea, and blindness of the right eye, impairments that are "severe" within the meaning of the Regulations. (AR 15).

The third step in the evaluation process requires the ALJ to determine whether the claimant's impairments meet or equal a listed impairment under 20 C.F.R. Part 404, Subpart P, Appendix 1. 20 C.F.R. § 404.1520(a)(4)(iii). If the answer is in the affirmative, the claimant is disabled and benefits are awarded. 20 C.F.R. § 404.1520(d). In the instant action, the ALJ concluded that Petitioner's severe impairments are not "severe" enough to meet or medically equal, either singly or in combination, one of the impairments listed in Appendix 1, Subpart P, Regulation No. 4. (AR 15). In so concluding, the ALJ gave particular attention to Listings 1.04 and 9.08. *Id.*

The fourth step of the evaluation process requires the ALJ to determine whether the claimant's residual functional capacity is sufficient for the claimant to perform past relevant work. 20 C.F.R. § 404.1520(a)(4)(iv). In this respect, the ALJ concluded that

**MEMORANDUM DECISION AND ORDER -6-**

Petitioner has the ability to lift up to twenty pounds occasionally and up to ten pounds frequently; sit or stand for up to two hours at a time for a total of six hours out of an eight hour workday; and frequently walk, bend or stoop, reach above shoulders, push or pull, turn arms and wrists, open and close fists, use hands and figures, and use foot controls; occasionally squat, kneel, and drive. (AR 17). The ALJ also concluded that Petitioner has mild limitations in his ability to concentrate, his memory, his ability to understand, his ability to exercise judgment, his ability to remember work procedures, his ability to follow detailed instructions, his ability to perform duties within a schedule, his ability to sustain a routine without supervision, his ability to relate with others, his ability to interact with the general public, and his ability to deal with stress. *Id*. Finally, the ALJ recognized that Petitioner is legally blind in his right eye. *Id.*

Having determined Petitioner's residual functional capacity, the ALJ concurred with the vocational expert's opinion, who had testified that based upon Petitioner's residual functional capacity, Petitioner could return to his past relevant work as a security guard, "in numbers of approximately 360,000 nationally." *Id.*

In the fifth and final step, if it has been established that a claimant can no longer perform past relevant work because of impairments, the burden shifts to the Commissioner to show that the claimant retains the ability to do alternate work and to demonstrate that such alternate work exists in significant numbers in the national economy. 20 C.F.R. §§ 404.1520(a)(4)(v), 404.1520(f); *Matthews v. Shalala*, 10 F.3d 678, 681 (9th Cir. 1993). In this respect, because the ALJ concluded that Petitioner can

**MEMORANDUM DECISION AND ORDER -7-**

return to his past relevant work as a security guard, the ALJ did not address the fifth step, nor did he need to.

In light of the ALJ's determination in the fourth step, Petitioner was found not to be disabled as defined in the Social Security Act. (AR 17).

**B.     Analysis**

Petitioner challenges the ALJ's (1) determination of Petitioner's residual functional capacity and (2) determination that Petitioner can return to his prior work as a security guard, claiming these determinations were not supported by substantial evidence or based on the correct legal standards. *See Petitioner's Brief in Support of Petition for Review*, pp. 5–8 (Docket No. 11).

**1.     Residual Functional Capacity**

Petitioner argues that the ALJ's determination of Petitioner's residual functional capacity was not based on substantial evidence because (1) the ALJ apparently did not take into consideration the Petitioner's knee impairment though he did not find Petitioner not credible (AR 5), (2) the ALJ rejected the testimony of Petitioner's treating physician, Dr. Roberts, without making an effort to recontact him (AR 7), and (3) no competent evidence supports the ALJ's determination that Petitioner has the ability to perform light work when both Dr. Roberts and Dr. Newhall concluded that Petitioner has the ability to perform only sedentary work (AR 8).

### a.     **Petitioner's Knee Impairment and Credibility**

In determining Petitioner's residual functional capacity, the ALJ noted that "[i]n making this assessment, [he] must consider all symptoms, including pain, and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence based on the requirements of 20 CFR § 404.1529, and Social Security Ruling 96-7p." (AR 16). He noted that:

> [t]he claimant testified that he feels he cannot work because of pain in his back and his neck. He stated that his carpal tunnel and tennis elbow problems have been corrected with surgery. His diabetes is controlled with medication as is his hypertension. His sleep apnea is mostly controlled with medication.
>
> He stated he cannot stand for one hour because of pain in his hip and right leg. He cannot sit for long periods of time because of pain in his lower back and in his leg.

(AR 16).

Presumably, the "pain in his hip and right leg" included the "disorder of the right knee," one of the severe impairments the ALJ noted Petitioner had. (AR 15). After all, Petitioner had testified during the hearing that his knee problem

> makes it very hard going up and down stairs and bending and stooping or anything like that, even lifting, trying to go up ladders or anything like that it is very uncomfortable, you know, safety wise. It don't feel safe, like that knee wants to give or that and the left leg definitely don't feel as strong as it used to.

(AR 79). Further, Petitioner contends that he has a hard time walking up and down stairs and hills and a hard time bending and standing back up. (AR 145, 184).

**MEMORANDUM DECISION AND ORDER -9-**

Despite Petitioner's testimony, the apparent sufficient evidence in the record supporting Petitioner's contentions (*see, e.g.*, AR 310–18), and the ALJ's determination that Petitioner has a severe impairment of a "disorder of the right knee," the ALJ nonetheless concluded that the ALJ had the residual functional capacity to frequently bend or stoop and occasionally squat and kneel.  (AR 17).  Therefore, it appears the ALJ rejected at least part of Petitioner's symptom testimony.

An ALJ may reject a petitioner's "testimony regarding the severity of [his] symptoms only if he makes specific findings stating clear and convincing reasons for doing so," and he "must state specifically which symptom testimony is not credible and what facts in the record lead to that conclusion."  *Smolen v. Chater*, 80 F.3d 1273, 1284 (9th Cir. 1996).

In this case, though the ALJ apparently rejected Petitioner's testimony regarding the severity of his symptoms with regard to his knee, he did not make specific findings stating clear and convincing reasons for doing so, nor did he specify which symptom testimony he found to be not credible and what facts in the record lead to that conclusion. Therefore, the ALJ did not properly address Petitioner's testimony.

### b. Rejecting Dr. Roberts' Testimony Without Recontacting Him

In determining Petitioner's residual functional capacity, the ALJ accepted the opinion of Dr. Roberts, Petitioner's treating physician, with regard to medical issues relating to the nature and severity of the claimant's impairments, but noted that "the opinion as to the claimant's residual functional capacity is an issue reserved to the

Commissioner." (AR 16). As the ALJ noted, Dr. Roberts had stated that "the claimant is not able to perform more than sedentary work and needed to lie down for two hours in an eight-hour workday." (AR 16). The ALJ reports that he carefully considered these statements, but gave them "diminished weight as they indicate very extreme limitations that are unsupported by objective evidence, [are] inconsistent with the claimant's testimony at the hearing and [are] inconsistent with the claimant's activities of daily living as demonstrated in the record." (AR 16–17). Further, the ALJ also pointed to the testimony of medical expert Dr. Clarke Newhall, who stated at the hearing that he thought the sedentary limitation was reasonable "without any questioning of it," but did not see the rationale for Petitioner's alleged need to lay down two hours a day. (AR 17, 46).

> Social Security Ruling 96-5p states that the Social Security
>
>> rules provide that adjudicators must always carefully consider medical source opinions about any issue, including opinions about issues that are reserved to the Commissioner. For treating sources, [like Dr. Roberts,] the rules also require that we make every reasonable effort to recontact such sources for clarification when they provide opinions on issues reserved to the Commissioner and the basis for such opinions are not clear to us.
>> . . .
>> Because treating source evidence (including opinion evidence) is important, if the evidence does not support a treating source's opinion on any issue reserved to the Commissioner and the adjudicator cannot ascertain the basis of the opinion from the case record, the adjudicator must make "every reasonable effort" to recontact the source for clarification of the reasons for the opinion.

Thus, Petitioner argues that because the ALJ concluded that Dr. Roberts had impermissibly offered an opinion on an issue reserved to the Commissioner, the ALJ

MEMORANDUM DECISION AND ORDER -11-

should have made "every reasonable effort" to recontact Dr. Roberts. *See Petitioner's Brief in Support of Petition for Review*, p. 7 (Docket No. 11).

SSR 96-5p requires the ALJ take efforts to recontact a treating source when the basis for the treating source's opinions are not clear or when the ALJ cannot ascertain the basis for the opinion from the case record. In this case, Dr. Roberts made clear the basis for his opinions and the ALJ could ascertain the basis for the opinion from the case record. (*See e.g.*, AR 305–07, 310–11). Accordingly, the ALJ was under no duty to make an effort to recontact Dr. Roberts even though Dr. Roberts had offered an opinion on an issue reserved to the Commissioner.

### c. No Competent Evidence Supports Determination of Residual Functional Capacity at Light Level

Both Dr. Roberts and Dr. Newhall agreed that Petitioner's residual functional capacity is limited to sedentary work. (*See* AR 46, 311). The regulations define sedentary work as

> involving lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although sitting is involved, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met. By its very nature, work performed primarily in a seated position entails no significant stooping. Most unskilled sedentary jobs require good use of the hands and fingers for repetitive hand-figure actions. "Occasionally" means occurring from very little up to one-third of the time. Since being on one's feet is required "occasionally" at the sedentary level of exertion, periods of standing or walking should generally total no more than about 2 hours of an 8-hour workday, and sitting should generally total approximately 6 hours of an 8-hour workday. Work processes in

**MEMORANDUM DECISION AND ORDER -12-**

>specific jobs will dictate how often and how long a person will need to be on his or her feet to obtain or return small articles.

SSR 83-10.

On the other hand, light work is defined as

>lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds.  Even though the weight lifted in a particular light job may be very little, a job is in this category when it requires a good deal of walking or standing – the primary difference between sedentary and most light jobs.  A job is also in this category when it involves sitting most of the time but with some pushing and pulling of arm-hand or leg-foot controls, which require greater exertion than in sedentary work; e.g., mattress sewing machine operator, motor-grader operator, and road-roller operator (skilled and semiskilled jobs in these particular instances).  Relatively few unskilled light jobs are performed in a seated position.
>"Frequent" means occurring from one-third to two-thirds of the time.  Since frequent lifting or carrying requires being on one's feet up to two-thirds of a workday, the full range of light work requires standing or walking, off and on, for a total of approximately 6 hours of an 8-hour workday.  Sitting may occur intermittently during the remaining time.  The lifting requirement for the majority of light jobs can be accomplished with occasional, rather than frequent stooping.  Many unskilled jobs are performed primarily in one location, with the ability to stand being more critical than the ability to walk.  They require use of arms and hands to grasp and to hold and turn objects, and they generally do not require use of the fingers for fine activities to the extent required in much sedentary work.

*Id*.

The ALJ concluded that Petitioner retained the residual functional capacity to

>lift up to 20 pounds occasionally and up to 10 pound[s] frequently.  He can sit or stand up to 2 hours at a time for a total of 6 hours out of an 8-hour workday.  He can frequently walk, bend/stoop, reach above shoulders, push/pull, turn arms and wrists, open and close fists, use hands and fingers, and use foot controls.  He can occasionally squat, kneel, and drive.  He has mild limitations in his

**MEMORANDUM DECISION AND ORDER -13-**

> ability to concentrate, his memory, his ability to understand, his
> ability to exercise judgment, his ability to remember work
> procedures, his ability to follow detailed instructions, his ability to
> perform duties within a schedule, his ability to sustain a routine
> without supervision, his ability to relate with others, his ability to
> interact with the general public, and his ability to deal with stress.
> He is legally blind in his right eye.

(AR 18). Comparing the ALJ's finding with the definitions of light and sedentary work, as set forth in the Social Security Rulings, it appears that the ALJ determined that Petitioner retains the residual functional capacity to engage in a light level of work.

As the ALJ noted, "the opinion as to the claimant's residual functional capacity is an issue reserved to the Commissioner." (AR 16). Thus, while the ALJ considered Dr. Newhall's and Dr. Roberts' opinions with regard to Petitioner's medical condition, the ALJ did not need to base his conclusion regarding Petitioner's level of residual functional capacity on the medical source opinions. As to determining the appropriate level of work Petitioner retains the ability to do, the ALJ need only have based his determination on proper legal standards with substantial supportive evidence. *See* 42 U.S.C. § 405(g); *Matney ex rel. Matney*, 981 F.2d at 1019; *Gonzalez*, 914 F.2d at 1200. Therefore, it is not necessarily an error for an ALJ's determination of a claimant's residual functional capacity to differ from that of medical sources.

### d. Conclusion

The ALJ apparently rejected Petitioner's testimony as to the severity of his impairments, at least with regard to his knee impairment, because the ALJ concluded that Petitioner could frequently bend and stoop and occasionally squat and kneel. (AR 18).

MEMORANDUM DECISION AND ORDER -14-

However, the ALJ failed to make specific findings stating clear and convincing reasons for doing so and did not specifically state which symptom testimony he found to be not credible or what facts in the record lead him to that conclusion.  However, the ALJ's decision not to give substantial weight to Dr. Roberts' testimony regarding Petitioner's alleged need to lay down two hours during the work day was not inappropriate because the basis for Dr. Roberts' opinion was ascertainable from the record.  Additionally, the ALJ's determination of Petitioner's residual functional capacity at a light level of work when both Dr. Roberts and Dr. Newhall agreed that the sedentary level was appropriate was also not necessarily inappropriate.  Nonetheless, because the ALJ inappropriately rejected Petitioner's testimony, his determination of Petitioner's residual functional capacity is not supported by substantial evidence.  Thus, Petitioner's Complaint and Petition for Review (Docket No. 1) is granted and the matter is remanded for further consideration.

On remand, the ALJ may again decide to reject Petitioner's testimony with regard to the severity of his impairments.  If so, the ALJ must make specific findings stating clear and convincing reasons for rejecting Petitioner's testimony and must state specifically which symptom testimony is not credible and what facts in the record lead to that conclusion.  *See Smolen*, 80 F.3d at 1284.

Though the matter is remanded, in the interest of preventing future avoidable appeals, the Court will address the ALJ's determination that Petitioner can return to his prior work as a security guard.

**MEMORANDUM DECISION AND ORDER -15-**

### 2. The Determination that Petitioner Can Return to his Prior Work as a Security Guard

Petitioner challenges the ALJ's determination that he can return to his prior work as a security guard, arguing that the determination is not based on substantial evidence. *Petitioner's Brief in Support of Petition for Review*, p. 6 (Docket No. 11). The ALJ's determination was based entirely on the testimony of the impartial vocational expert. (AR 17). Petitioner argues that the hypothetical posed to the vocational expert, on which the vocational expert based his opinion, was not complete or entirely accurate, and thus cannot serve as substantial evidence for the ALJ's determination. *See id*.

Hypothetical questions posed to a vocational expert must "set out *all* the limitations and restrictions of the particular claimant, including, for example, pain." *Embrey v. Bowen*, 849 F.2d 418, 422 (9th Cir. 1988). If neither the hypothetical posed to or the answer from the vocational expert properly set forth all of the claimant's impairments, the vocational expert's testimony cannot constitute substantial evidence to support the ALJ's findings. *Gallant v. Heckler*, 753 F.2d 1450, 1456 (9th Cir. 1984).

In this case, the hypothetical posed to the vocational expert, which was basically a recitation of the ALJ's determination of Petitioner's residual functional capacity, incorrectly stated that Petitioner had earned a GED and did not set forth all of Petitioner's impairments because it did not mention Petitioner's knee impairment. (*See* AR 70). The vocational expert reported that there would be approximately 360,000 security guard jobs available in the national economy based on the hypothetical. (AR 73).

MEMORANDUM DECISION AND ORDER -16-

When Petitioner's attorney pointed out to the vocational expert that Petitioner had, in fact, not earned a GED, the vocational expert opined that there would be approximately 80,000 security guard jobs available to someone who met the description of the hypothetical but did not have a GED. (AR 74–75). Nonetheless, in his decision, the ALJ reported that "the claimant could return to his past relevant work as a security guard, in numbers of approximately 360,000 nationally." (AR 17).

As to Petitioner's knee impairment, as mentioned above, the ALJ apparently rejected Petitioner's testimony as to the severity of the ailment but did not state specific reasons for rejecting Petitioner's testimony. Accordingly, Petitioner's relevant limitations regarding his knee impairment should have been included in the hypothetical. *See Embrey*, 849 F.2d at 423 ("Unless the record indicates that the ALJ had specific and legitimate reasons for disbelieving a claimant's testimony as to subjective limitations such as pain, those limitations must be included in the hypothetical in order for the vocational expert's testimony to have any evidentiary value."). The hypothetical the ALJ posed to the vocational expert did not mention any limitations regarding Petitioner's ability to use his knees. Because the hypothetical did not include limitations regarding Petitioner's knee impairment[1] and incorrectly stated that Petitioner had a GED, particularly where it appears that an accurate statement as to Petitioner's not having a GED would have significantly changed the vocational expert's answer, the vocational expert's testimony

---

[1] Had the ALJ properly rejected Petitioner's testimony regarding the severity of his knee impairments, the hypothetical would not need to include such a limitation. Therefore, if, on remand, the ALJ again rejects Petitioner's testimony with the appropriate specific findings stating clear and convincing reasons for doing so and stating specifically which symptom testimony is not credible and the facts in the record that lead to that conclusion, the hypothetical to the vocational expert will not need to include a knee-use limitation.

**MEMORANDUM DECISION AND ORDER -17-**

did not have any evidentiary value. Therefore and because the ALJ's determination that Petitioner could return to his prior relevant work as a security guard was based completely on the vocational expert's testimony, the ALJ's determination is not supported by substantial evidence. Therefore, Petitioner's Complaint and Petition for Review is granted and the action remanded for further consideration.

## V.

## CONCLUSION

In bringing his Complaint and Petition for Review (Docket No. 1), Petitioner challenged the ALJ's determination of Petitioner's residual functional capacity and determination that Petitioner could return to his past relevant work as a security guard, claiming the determinations were not supported by substantial evidence or based on proper legal standards. *See Petitioner's Brief in Support of Petition for Review*, pp. 6–8 (Docket No. 11). As to these challenges, the Court finds, and thus concludes, that the ALJ's determinations were not supported by substantial evidence.

## VI.

## ORDER

For the reasons set forth above, the Court concludes that the ALJ's determination that Petitioner is not disabled within the meaning of the Social Security Act is not, at least in part, supported by substantial evidence in the record or based on proper legal standards. Accordingly, the Commissioner's decision that Petitioner is not disabled within the meaning of the Social Security Act is reversed and this matter is remanded pursuant to

sentence four of 42 U.S.C. § 405(g) for further proceedings consistent with this Memorandum Decision and Order.



DATED:  **June 6, 2006**.

Honorable Larry M. Boyle
Chief U. S. Magistrate Judge

**MEMORANDUM DECISION AND ORDER -19-**